# WAGGAMAN *v.* DULANY.

EQUITABLE LIEN; NOTATION; OF SECURITY; ON MARGIN OF NOTES.

The delivery to a creditor of promissory notes, indorsed by the debtor with the words, "secured by Woodley Park," noted on the margin of each note, creates an equitable lien on such property which is superior to a dower interest under sec. 1158 of the Code (31 Stat. at L. 1375, chap. 854), which provides that the right of dower shall not operate to the prejudice of any claim for the purchase money of such land or other lien on the same. (Distinguishing *Berl* v. *Dulany*, 42 App. D. C. 121.)

No. 3105. Submitted April 2, 1918. Decided May 6, 1918.

HEARING on an appeal by the plaintiff from a decree of the Supreme Court of the District of Columbia in a suit to establish dower in an equitable estate. *Affirmed.*

The COURT in the opinion stated the facts as follows:

The appellant, Christine Waggaman, claims dower in a certain equitable estate of her late husband, Thomas E. Waggaman, in what is known as Woodley Park. This estate was acquired by him before their marriage, which was in 1891. At this time there was no law giving the wife dower in the equitable estate of her husband. In 1896, Congress passed an act providing "that dower shall hereafter be assigned to a widow en-

titled to the same in the equitable as well as the legal estate of her deceased husband." 29 Stat. at L. 194, chap. 303. This remained in force until January 1, 1902, when it was repealed, and sec. 1158 of the Code [31 Stat. at L. 1375, chap. 854] substituted, which provides that "a widow shall be entitled to dower in lands held by equitable as well as legal title in the husband at any time during the coverture, whether held by him at the time of his death or not, but such right of dower shall not operate to the prejudice of any claim for the purchase money of such lands or other lien on the same."

At different dates, between January 2, 1897, and August 2, 1900, Mr. Waggaman, in pursuance of a practice of his, caused one of his employees to execute seven promissory notes aggregating $265,164.26. Each of these notes bore on its margin this phrase, "secured by Woodley Park," and was indorsed by Waggaman. Being indebted to the Catholic University of America, of which he was treasurer, Waggaman, in the spring of 1902, turned over the notes to that institution as part security for what he owed. Subsequently he was declared a bankrupt and the appellee named as trustee of his estate. He died in 1906. Afterwards arrangements were made by which the University's claim against his estate was compromised and the notes in question delivered by the University to the trustee in bankruptcy. Each was indorsed thus: "Without recourse to us pay to the order of H. Rozier Dulany, trustee of Thomas E. Waggaman—the Catholic University of America by Thomas J. Shahan, Rector."

*Mr. W. W. Millan, Mr. R. E. L. Smith,* and *Mr. C. H. Merillat,* for the appellant, in their brief cited:

Anderson's Law Dict. 1034; *Bennett* v. *Harms,* 51 Wis. 251; *Berl* v. *Dulany,* 42 App. D. C. 121; *Botsford* v. *Morehouse,* 4 Conn. 550; *Bowery Nat. Bank* v. *Duncan,* 12 Hun. 405; *Boyd* v. *Harrison,* 36 Ala. 537; *Cailleret* v. *Bernard,* 15 Miss. 319; *Donovan* v. *Pitcher,* 53 Ala. 411; *Harris* v. *Whitely,* 98 Md. 441; *Hatcher* v. *Ruford,* 60 Ark. 169; *Hawley* v. *James,* 5 Paige, 318; *Henson* v. *Moore,* 104 Ill. 403; *Hitz* v. *Nat.*

*Met. Bank,* 111 U. S. 722; *Hooper* v. *Stewart,* 23 App. D. C. 434; *Hunt* v. *Eaton,* 55 Mich. 362; *Re Alexander,* 53 N. J. Eq. 96; *Insurance Co.* v. *Allen,* 43 N. Y. 389; *James* v. *Upton,* 96 Va. 296; *Jennisons* v. *Leonard,* 21 Wall. 309; *Johnson* v. *Thomas,* 23 App. D. C. 141; *Kamphouse* v. *Gaffner,* 73 Ill. 453; *Lewis* v. *Hawkins,* 23 Wall. 125; *May* v. *Fletcher,* 40 Ind. 575; *Melizet's Appeal,* 17 Pa. 449; *Merrill* v. *Ins. Co.* 73 N. Y. 456; *Myers* v. *Mayhew,* 32 App. D. C. 205; *Noble* v. *Morton,* 22 Ind. 160; *Noel* v. *Ewing,* 9 Ind. 37; *Pannill* v. *Coles,* 81 Va. 383; *Pratt* v. *Fountain,* 73 Ga. 261; *Purdy* v. *Purdy,* 3 Md. Ch. 547; *Rabbitt* v. *Gaither,* 67 Md. 94; *Reeves* v. *Lowe,* 8 App. D. C. 105; *Safe Deposit Co.* v. *Gittings,* 103 Md. 497; *Shelton* v. *Alcox,* 11 Conn. 239; *Skidmore* v. *R. R. Co.* 112 U. S. 33; *Slingluff* v. *Hubner,* 101 Md. 657; *Spurlock* v. *Burnett,* 183 Mo. 524; *Starkweather* v. *Dyer,* 30 App. D. C. 149; *Sturgis* v. *Ewing,* 18 Ill. 176; *Sutton* v. *Askew,* 66 N. C. 172; *Thornburg* v. *Thornburg,* 18 W. Va. 522; *Towle* v. *Berry,* 44 N. H. 569; *Widdicombe* v. *Childers,* 124 U. S. 404; *Young* v. *Young,* 45 N. J. Eq. 37; 14 Cyc. 884.

*Mr. Samuel Maddox* and *Mr. H. Prescott Gatley,* for the appellee, in their brief cited:

Bankruptcy Act, sec. 70; *Berl* v. *Dulany,* 42 App. D. C. 121; *Boyd* v. *Harrison,* 36 Ala. 533; *Bretton* v. *Fox,* 100 Mass. 234; D. C. Code, sec. 1158; *Harris* v. *Whitely,* 98 Md. 430; *Henson* v. *Moore,* 104 Ill. 403; *Hitz* v. *National Metropolitan Bank,* 111 U. S. 722; *Re Alexander,* 53 N. J. Eq. 96; *May* v. *Fletcher,* 40 Ind. 575; *Noel* v. *Ewing,* 9 Ind. 37; *O'Brien* v. *Ash,* 169 Mo. 283; *O'Kelly* v. *Williams,* 84 N. C. 281; *Reeves* v. *Haynes,* 88 N. C. 310; *Safe Deposit & T. Co.* v. *Gittings,* 103 Md. 485; *Slingluff* v. *Hubner,* 101 Md. 652; *Sturgis* v. *Ewing,* 18 Ill. 176; *Sutton* v. *Askew,* 66 N. C. 172; *Walker* v. *Brown,* 165 U. S. 654; *Wessen* v. *Hunter,* 66 N. C. 189; *Williams* v. *Johnson,* 30 Md. 500.

Mr. Chief Justice SMYTH delivered the opinion of the Court:

Prior to 1896, there was no statute giving a wife dower in

the equitable estate of her husband, and she was not entitled to any under the common law. *Stelle* v. *Carroll,* 12 Pet. 201, 204, 9 L. ed. 1056, 1057. Appellant claims nothing under the Act of 1896, but submits her case upon the contentions (a) that her husband had an equitable estate in Woodley Park within the meaning of sec. 1158 of the Code [31 Stat. at L. 1375, chap. 854]; (b) that by virtue of that section she is entitled to dower in this property although acquired by him before her marriage; (c) that appellee's lien, if he has any, is subordinate to her dower rights; and (d) that under the circumstances disclosed by the record she is entitled to enforce her right in a court of equity. We find it necessary to consider only the question as to whether or not the trustee has a lien upon the property, and whether, assuming that appellee has a dower interest in the property, the lien takes precedence of it.

Appellant admits that her husband, for the purpose of securing the University for part of nearly a million of dollars which he owed it, "caused a clerk in his office to execute" the "seven promissory notes" aforementioned, on the dates which they bear, and "to write upon the margin of each the notation," "secured by Woodley Park;" that he "indorsed said notes, guaranteeing their payment, and kept them on file in his office until the spring of 1902, when, at the demand of the officials of the University, he turned them, with other notes, over to said officials." This was not merely a promise to give his interest in Woodley Park as security for the notes. It was an actual dedication of his interest for that purpose. If this constituted an equitable lien, it attached as to all the notes long before sec. 1158 of the Code became effective, January 1, 1902. That section provides that the right of dower conferred by it upon the wife "shall not operate to the prejudice of any claim for the purchase money of such land or other *lien* on the same."

This brings us to consider the question as to whether or not what Waggaman had done operated to make the notes an equitable lien as between him and the University. If it did, priority must be awarded to the lien over Mrs. Waggaman's claim for dower. In *Walker* v. *Brown,* 165 U. S. 654, 664, 41 L. ed. 865, 870, 17 Sup. Ct. Rep. 453, Brown wrote to Walker that

he had placed certain bonds in the hands of third parties "with the understanding that any indebtedness that they may be owing you at any time shall be paid before the return to me of these bonds." It was claimed that this constituted a lien in equity upon the bonds in favor of Walker. We quote from the decision: "It is clear that if the express intention of the parties was to create an equitable lien upon the bonds or the value thereof, or if such intention arises by a necessary implication from the terms of the agreement construed with reference to the situation of the parties at the time of the contract, and by the attendant circumstances, such equitable lien will be enforced by a court of equity against the bonds in the hands of Brown or against third persons who are volunteers or have notice." Applying these principles to the case in hand, Mr. Justice White observed of the Brown letter: "This language certainly designates the bonds or the value thereof as a security for the debt to Walker & Company. It says that the bonds belonging to Brown shall not be returned to him so long as the debt to Walker is unpaid." Pomeroy in his work on Equity Jurisprudence, vol. 3, § 1235, puts the matter thus: "The doctrine may be stated in its most general form that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, as security for a debt or other obligation, or whereby the party promises to * * * transfer the property as security, creates an equitable lien upon the property so indicated." *Pinch* v. *Anthony,* 8 Allen, 536, ruled that "a party may by express agreement create a charge or claim in the nature of a lien on real as well as on personal property, of which he is the owner or possessor, and that equity will establish and enforce such charge or claim." See also *Ketchum* v. *St. Louis,* 101 U. S. 306, 25 L. ed. 999, and *Burdon Cent. Sugar Ref. Co.* v. *Payne,* 167 U. S. 127, 147, 42 L. ed. 105, 112, 17 Sup. Ct. Rep. 754. In the case at bar, as we before observed, there is not only a promise to give the equitable interest as security, but an *actual* giving of it. The indorsement on the notes is to the effect that Woodley Park was pledged by Waggaman as security for their payment.

There is nothing in *Berl* v. *Dulany,* 42 App. D. C. 121, which conflicts with this, because in that case "the loan was without security or promise of security." To be sure, the plaintiff desired to have it secured, but the debtor refused. Between that case and this there is no analogy.

The compromise between the University and the trustee in bankruptcy whereby the notes were returned to him did not have the effect of satisfying the debt. From the indorsement which the University placed upon the notes, it is manifest that it was the intention of the parties to the transfer to keep the debt alive, and this is determinative of the matter. 10 R. C. L. p. 667. We assume that the trustee desired to have the debt in that posture so that he might be able to enforce it against any claim such as is made by Mrs. Waggaman.

No reversible error appearing in the record, the decree of the lower court is affirmed, with costs. *Affirmed.*

A motion for rehearing and for modification of the opinion and decree was denied on May 25, 1918.